# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DARREN DEVINE, ) | CASE NO. 1:11-CV-00347 |
| ) | |
| Petitioner, ) | JUDGE JACK ZOUHARY |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| TERRY TIBBALS, Warden ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner, Darren Devine ("Devine"), challenges the constitutionality of his conviction in the case of *State v. Devine*, Cuyahoga County Court of Common Pleas Case No. CR-515422-B. Devine, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on February 17, 2011. On May 17, 2011, Warden Terry Tibbals ("Respondent") filed his Answer/Return of Writ. (ECF No. 6.) Devine filed a Traverse on July 1, 2011. (ECF No. 8.) For reasons set forth in detail below, it is recommended that Devine's petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002). The state appellate court summarized the facts underlying Devine's conviction as follows:

[*P4] On September 10, 2008, the Cuyahoga County Grand Jury indicted Devine

along with his brother; two of the counts pertained to Devine, and charged him with aggravated murder and attempted aggravated murder. Each count referred to a different victim. The victim named in count one was Devine's cousin. Devine pleaded not guilty to the charges at his arraignment, and two defense attorneys were appointed to his case.

[*P5] The record reflects Devine's trial counsel began seeking discovery from the state within days of their assignment. Within two weeks, they filed motions requesting the trial court to appoint both an investigator and an expert to aid in Devine's defense. They also requested an oral hearing on these motions.

[*P6] On October 9, 2008, less than a month after Devine's indictment, the trial court conducted the hearing and granted both motions. The prosecutor additionally stated for the record that he had provided to the defense attorneys "a full and open reading of the file." The prosecutor "read all the material witness statements" concerning the incident to them. One of Devine's attorneys concurred in this assessment.

[*P7] The court set the case for trial to be held on November 24, 2008. In this interim, the state filed its formal responses to the defense discovery requests. These indicated that after his arrest, Devine provided both an oral and a written statement to the investigating detective.

[*P8] In his written statement, Devine admitted that he had "maybe twelve or thirteen beers" with several people at his house, including his cousin and his cousin's brother-in-law. Devine found out that his car window had been "broke[n] out." He "got in the car to go find out what happened," and, while driving down the next street, hit one of the victims with his car. He then returned to his home, where his brother disposed of Devine's car.

[*P9] The court conducted the final pretrial hearing on Friday, November 21, 2008. The prosecutor stated for the record that, in exchange for a guilty plea, the state would amend count one to a charge of murder, dismiss count two, and recommend a sentence of life with the possibility of parole in 15 years.

[*P10] The trial court requested the prosecutor to "remind" it of the statutory maximum penalties involved with the indictment, and, then, to describe the evidence he expected to present at trial. According to the prosecutor, Devine had argued with his cousin, and an "independent eyewitness" subsequently saw Devine in his car as he "steered directly towards" his cousin and the other victim, "hitting [his cousin], throwing [him] 123 feet and killing him."

[*P11] Defense counsel stated that he and his co-counsel had "very lengthy discussions" about the state's plea offer with their client both the previous

afternoon and prior to the hearing, and believed Devine required more time to consider it. In order to ascertain Devine's position, the trial court addressed him, reminded him he was "presumed innocent," and asked him if he "understood everything that has been said" up to that point.

[*P12] Devine responded that there were a "couple things" he wasn't "really clear on yet." The court asked if it was "something [he] discussed with [his] lawyers," and Devine answered, "Yeah, something [he] discussed with the lawyers earlier." The court indicated the matter would be addressed, then proceeded to conduct a plea colloquy.

[*P13] The trial court began by asking if, other than the plea offer, any threats or promises been made to get him to change his plea. Devine responded, "No." The court then reminded Devine of each of his constitutional rights, informed him of the amended charge, and informed him, in detail, of the maximum penalties involved with a guilty plea to the amended charge. The court proceeded to describe the maximum penalties if he should be convicted of the offenses.

[*P14] Finally, the court asked Devine if there were anything else he needed clarified before he decided whether or not to accept the state's offer. Devine responded, "If I can just talk to the lawyers for a couple minutes, that would be fine." The trial court permitted the matter to be continued over the weekend.

[*P15] When the case was called for trial the following Monday, the prosecutor again outlined the offer made to Devine with the recommended sentence, informed the court that defense counsel had "been given full discovery," and noted the defense had taken advantage of the opportunity of an independent mechanical examination of Devine's automobile. The court then asked one of Devine's attorneys if the prosecutor had accurately described how matters stood.

[*P16] At that point, Devine spoke up and said, "No. I would like to request to get new counsel, Your Honor." The court requested of Devine why, and he answered, "Because they are back in the room telling me I'm guilty, I'm guilty; I stand no chance. And I don't feel like I'm guilty. Plus, they promised me this investigator would come and interview me. He never did. They spent zero time interviewing any witnesses of mine, none." Devine further claimed he had "spent probably a total of a half hour with" his attorneys, and indicated he did not feel like "let[ting] them decide my life in a half hour."

[*P17] When the trial court inquired if what he was saying were true, however, Devine allowed it was perhaps not "word-for-word." The court reminded him his case was scheduled for trial that day, informed him his attorneys were experienced and prepared, and commented that counsel had negotiated a "more than adequate plea bargain." The court then asked him if there was any further

point in discussing a possible plea.

[*P18] Devine answered, "Sir, we could talk. Yeah, we could talk." Upon further discussion with the court, Devine indicated he would like to confer with his sister. The court permitted him to do so privately, and left it up to Devine to also confer with his attorneys. The court called a recess until the afternoon.

[*P19] By that time, Devine informed the court he had spoken with his sister and his attorneys and stated he would "take a plea." For the second time, the trial court conducted a thorough Crim.R. 11(C)(2) colloquy. n1

FOOTNOTES

n1 The trial court omitted only to inform Devine, who already had appointed counsel, that he had a right to appointed counsel to represent him.

[*P20] Each time the court asked Devine if he understood his rights, the nature of the charge, and the penalties involved, he responded, "Yes." When the court asked him if, besides what had been stated on the record, any threats or promises had been made to him, Devine answered, "No." The court then asked him again if entering a guilty plea of his "own free choice"; Devine assured, "Yes."

[*P21] Thus, when Devine answered that he pleaded, "Guilty" to amended count one, the trial court accepted his plea, dismissed count two, pronounced him guilty, and ultimately imposed a sentence of life imprisonment with the possibility of parole after 15 years.

*State v. Devine*, 2009 Ohio App. LEXIS 4891, 2009-Ohio-5825 at ¶¶4-21 (Ohio Ct. App., Nov. 5, 2009)

## II. Procedural History

### A. Conviction

On September 10, 2008, a Cuyahoga County Grand Jury charged Devine with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A), and one count of attempted aggravated murder in violation of O.R.C. §§ 2923.02 & 2903.01(A). (ECF No. 6-1, Exh. 1.) Initially, Devine pled not guilty. (ECF No. 6-1, Exh. 2.) On November 24, 2008, Devine, represented by counsel John Gibbons and Joseph Pagano, plead guilty to a reduced

charge of murder in violation of O.R.C. § 2903.02. (ECF No. 6-1, Exh. 3.) The charge of attempted murder was nolled. *Id.* On the same date, the trial court sentenced Devine to a term of life imprisonment with parole eligibility after fifteen years. *Id.*

**B. Direct Appeal**

On December 24, 2008, Devine, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court") raising one assignment of error: "The trial court abused its discretion by accepting the appellant's guilty plea without ensuring that the appellant had been afforded the effective assistance of counsel." (ECF No. 6-1, Exhs. 4 & 5.)

On November 5, 2009, Devine's conviction was affirmed. (ECF No. 6-1, Exh. 7.)

On December 29, 2009, Devine filed a Notice of Appeal with the Supreme Court of Ohio, raising one proposition of law:

> In order to ensure that the criminal defendant understands his trial rights and that by entering a guilty plea, that defendant is waiving said trial rights, the trial court must fully explain the nature of the waived rights. The right to effective assistance of counsel is one of those rights. Where the record establishes a prima facie case that the effectiveness of trial counsel has been denied, the trial court may not accept a guilty plea without a full hearing on the issue.

(ECF No. 6-1, Exh. 9.)

On March 10, 2010, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 6-1, Exh. 11.)

**C. Federal Habeas Petition**

On February 17, 2011, Devine filed a Petition for Writ of Habeas Corpus and asserted one ground for relief:

GROUND ONE: The petitioner's guilty plea was void or voidable because it was

-5-

> not entered knowingly, intelligently or voluntarily because of the ineffectiveness of his counsel.
>
> Supporting Facts: At the time of the plea, petitioner told the trial judge that he was unhappy with counsel. Counsel had met with petitioner only a few times. Investigator hired by counsel, failed to contact [defendant], Petitioner requested new counsel, in spite of request, the trial judge refused to appoint new counsel. The trial judge refused to hold a hearing on the matter. The trial court told the petitioner that the court didn't want to continue the case.
>
> The petitioner informed the court that no witness had been interviewed on his behalf. The court informed the petitioner that the attorneys were competent, and whether the petitioner received a fair trial was up to the judge. The court further informed the petitioner that new counsel would not have time to investigate, because the court would not continue the trial date, which was approximately two weeks away.
>
> Thus the petitioner entered the plea under duress. The reultant [sic] guilty plea was in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(ECF No. 1.)

### III. Exhaustion and Procedural Default

**A.   Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B. Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still

---

[1] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**C. Analysis**

Respondent argues that ground one, Devine's sole ground for relief, is procedurally defaulted. (ECF No. 6 at 8-10, 13-20.) Though Respondent concedes that Devine, on direct appeal, argued that his guilty plea was not the product of a knowing, intelligent, and voluntary act, he maintains that ground one was not fairly presented to the state courts because the argument was essentially not well articulated or factually developed. *Id*. However, this Court

-9-

declines to address the procedural default issue, and will instead proceed to address the merits of Devine's claim. The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case. *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

### IV. Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Guilty Plea Entered Under Duress**

In his sole ground for relief, Devine argues that his guilty plea was not entered knowingly, intelligently, and voluntarily, because his appointed counsel was ineffective. (ECF Nos. 1 & 8.) Specifically, Devine asserts that counsel did not spend adequate time preparing for trial or interviewing witnesses. Devine further contends that the trial court left him with no option but to either plead guilty or proceed to trial with unprepared counsel. *Id*.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.")  A trial court should ensure that a "defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id.*, *quoting United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005); *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988).  "A failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." *United States v. Broce*, 488 U.S. 563, 574 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973) (ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea); *accord United States v. Bradshaw*, 1998 U.S. App. LEXIS 10517 (6th Cir. May 20, 1998) (a claim that a defendant received ineffective assistance of counsel, or that his guilty plea was coerced, is "not ordinarily ... barred by an apparent unconditional guilty plea.") However, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id.* (*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).

Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (*quoting McMann v. Richardson*,

-12-

397 U.S. 759, 771 (1970)). "[T]he Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Carley v. Hudson*, 563 F. Supp. 2d 760, 771 (N.D. Ohio 2008) (citing *Hill v Lockhart*, 474 U.S. at 58). Under *Strickland*, a petitioner must demonstrate the following: 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). To satisfy the second prong in the guilty plea context, a petitioner "must show that there is a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59.

The state appellate court addressed this argument as follows:

> [*P23] Devine asserts that, because he expressed displeasure with his attorneys at the final pretrial, the trial court should have conducted an evidentiary hearing on the issue of defense counsels' efforts on his behalf before proceeding to the plea hearing. He claims that, under the circumstances, the record otherwise is inadequate to show his plea was knowingly, voluntarily and intelligently made. This court does not agree.
>
> [*P24] Crim.R. 11(C) provides in relevant part:
>
>> "RULE 11. Pleas, Rights Upon Plea
>>
>> "* * *
>>
>> "(C) Pleas of guilty and no contest in felony cases
>>
>> "* * *
>
> [*P25] "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or a plea of no contest without first addressing the defendant personally and doing all of the following:
>
> [*P26] "(a) Determining that the defendant is making the plea voluntarily, with

understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

[*P27]  "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

[*P28]  "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."  (Emphasis added.)

[*P29]  Regarding an argument such as Devine makes in this case, the court in *State v. Barnett* (1991), 73 Ohio App.3d 244, 248-49, 596 N.E.2d 1101 made the following observations:

[*P30]  "In determining whether counsel was constitutionally ineffective, the central issue in any case is whether an accused had a fair trial and substantial justice was done.  *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304.  An accused is denied his right to a fair trial if his counsel fails to play the role necessary to ensure that the accused enjoys the benefits of the adversarial process which the law affords him for testing the charges brought by the state.  *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

[*P31]  "A plea of guilty constitutes a complete admission of guilt. Crim.R. 11(B)(1).  'By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.'  *United State* [sic] *v. Broce* (1989), 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927, 936. The plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt.  *Menna v. New York* (1975), 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195.

[*P32] "When a defendant enters a plea of guilty as a part of a plea bargain he waives all appealable errors which may have occurred at trial, unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea.  *State v. Kelley* (1991), 57 Ohio St.3d 127, 566 N.E.2d 658.  "A failure by counsel to provide advice [that impairs the knowing and voluntary nature of the plea] may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve the predicate for setting aside a

valid plea.' *United States v. Broce*, *supra*, 488 U.S. at 574, 109 S.Ct. at 765, 102 L.Ed.2d at 939.

[*P33] "On the basis of the foregoing, it is clear that a plea of guilty waives the right to claim that the accused was prejudiced by constitutionally ineffective counsel, except to the extent the defects complained of caused the plea to be less than knowing and voluntary.

[*P34] "Appellant's argument that he was forced to plead guilty because his counsel failed to prepare for trial raises an issue concerning the voluntariness of his plea. However, determination of that issue necessarily depends on matters not in the record before us. We decline to accept appellant's statement of them* * *."

[*P35] The supreme court came to a similar conclusion in *State v. Spates* (1992), 64 Ohio St.3d 269, 1992 Ohio 130, 595 N.E.2d 351.

[*P36] In this case, although Devine argues his counsel provided inadequate assistance, nothing in the record supports this argument. The record instead reflects that counsel's efforts during the discovery process disclosed evidence that established proof of his guilt of the crimes. Nevertheless, counsel negotiated an advantageous plea agreement. Counsel also gave every indication of being fully prepared to take the case to trial, should their efforts to persuade Devine to accept the state's offer prove unavailing. *State v. Melton*, Cuyahoga App. No. 89568, 2008 Ohio 925; see, also, *State v. Knott*, Athens App. No. 03CA6, 2004 Ohio 510.

[*P37] The trial court provided Devine with every opportunity to resolve his differences with counsels' approach to his case and to fully consider their opinions about his options. Only thereafter did the trial court proceed with a plea hearing. Under these circumstances, the trial court did not err in accepting Devine's guilty plea. n2

FOOTNOTES

n2 Under such circumstances, the trial court would have been justified in denying a subsequent motion to withdraw the plea. *State v. Lavender* (Dec. 21, 2001), Lake App. No. 2000-L-049, 2001 Ohio 8790.

[*P38] Since Devine cannot demonstrate counsels' actions caused his plea to be less than either knowing or voluntary, his assignment of error is overruled. *State v. Wenson* (July 19, 2001), Cuyahoga App. No. 78522, 2001 Ohio App. LEXIS 3228; *State v. McDonall* (Dec. 16, 1999), Cuyahoga App. No. 75245, 1999 Ohio App. LEXIS 6074, unreported; *State v. Barnett*, *supra*.

*Devine*, 2009-Ohio-5825 at ¶¶23-38.

During plea hearing, Devine informed the trial court that he believed his counsel was unprepared and were pressuring him to plead guilty. (ECF No. 6-2, Tr. 37-38.) The state appellate court, however, was not unreasonable in finding that there was simply no factual basis for Devine's assertion that counsel was unprepared. Nothing Devine filed in the state appellate court or supporting the instant petition contains any facts to support his allegation that counsel was unprepared or that key witnesses with beneficial information were ignored. Before the trial court accepted Devine's plea, it conducted a plea colloquy and found that Devine knowingly, intelligently, and voluntarily pleaded guilty. (ECF No. 6-2, Tr. 23-24, 46-48.) The court informed Devine of his trial rights, and Devine stated he understood those rights. *Id*. When the court asked if anyone had threatened him into making the plea, Devine answered, "No." *Id*. at 46. Though Devine displayed some initial hesitancy, he entered his plea after being allowed two breaks in the hearing, one over a weekend to conduct further discussions with his lawyers. During the second break he was allowed to speak with his sister. Afterwards, Devine answered all of the courts questions in a manner which reasonably lead the court to believe his plea was knowingly, intelligently, and voluntarily entered. Devine has not presented this Court with any specific facts or allegations that would support finding a reasonable probability that, but for counsel's alleged lack of preparation or investigation, he would not have plead guilty and would have insisted on going to trial. It is clear that Devine's defense counsel requested and received discovery, as well as a private investigator and an automobile mechanical expert. (ECF No. 6-2, Tr. at 4-5.) Though Devine refers to the alleged lack of interviews with "his witnesses," he has not identified who "his witnesses" are, or what their testimony might have been. This Court

cannot find that the state appellate court's determination was contrary to or an unreasonable application of clearly established federal law, or that the court's determination of the facts in light of the evidence presented was unreasonable.

As such, Devine's sole ground for relief is without merit.

### V. Conclusion

For the foregoing reasons, it is recommended that Devine's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: February 21, 2012

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** ***See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).** ***See also Thomas v. Arn*, 474 U.S. 140 (1985),** ***reh'g denied*, 474 U.S. 1111 (1986).**

Case: 1:11-cv-00347-JZ Doc #: 11 Filed: 02/21/12 18 of 18. PageID #: 262